# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SUSAN RAINWATER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. CIV-19-382-R |
| | ) | |
| THE STATE OF OKLAHOMA *EX REL.* | ) | |
| THE BOARD OF REGENTS OF | ) | |
| THE UNIVERSITY OF OKLAHOMA, | ) | |
| ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED ORDER

Before the Court is the Motion to Dismiss filed by Defendants, the State of Oklahoma, *ex rel* the Board of Regents of the University of Oklahoma and Jason Sanders, Christina Bennett, David Johnson, and Edwin Ibay, in both their individual and official capacities. (Doc. No. 26) Plaintiff responded in opposition to the motion (Doc. No. 27) and Defendants filed a Reply in support of the motion (Doc. No. 28). Upon consideration of the parties' submissions, the Court finds as follows.

Plaintiff Rainwater seeks relief under Title II of the Americans with Disabilities Act "ADA," 42 U.S.C. § 12131, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, 42 U.S.C. § 1983, and state law against the State, ex rel. the Board of Regents of the University of Oklahoma and certain of its employees, related to her dismissal from the Master's in Health Administration ("MHA") program allegedly because of poor performance. She contends that she was denied accommodation by the MHA program, specifically by Defendant Assistant Professor Christina Bennett, that would have enabled

her to successfully complete the required coursework. Plaintiff names as Defendants the Board of Regents, Jason Sanders, Vice President and Provost of the Oklahoma Health Sciences Center, Professor Bennett, David Johnson, Associate Dean for Academic Affairs, and Edwin Ibay, current director of the MHA program. With the exception of Mr. Ibay, who is named solely in his official capacity, the individual Defendants are sued both individually and in their official capacities.[1]

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted); see *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). A claim has facial plausibility when the court can draw "the reasonable inference that the defendant is liable for the misconduct alleged*." Iqbal*, 556 U.S. at 678. In § 1983 cases, it is particularly important "that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her." *See Robbins*, 519 F.3d at 1249–50; *see also Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009).

Defendants Sanders, Johnson, and Ibay in their official capacities seek the dismissal of Plaintiff's ADA and Rehabilitation Act claims, asserting that because the Board is also a Defendant, the claims are redundant. Plaintiff asserts the official capacity claims are not

---

[1] The Court notes at the outset that because Christina Bennett is the former director of the MHA program, suing her "in her official capacity as former Director of the University of Oklahoma Master's in Health Administration Program." (Doc.No. 8) is not appropriate. Rather, as pled, Director Ibay, who currently heads the program, is the proper official capacity Defendant. Accordingly, Defendant Bennett in her official capacity is hereby DISMISSED.

redundant because she seeks declaratory and injunctive relief and the University, via the Board, may assert Eleventh Amendment immunity in the future.[2] At this juncture, and despite Plaintiff's arguments to the contrary, the Court finds no basis for retaining the redundant claims against the individual defendants sued in their official capacities. Suits against employees in their official capacities operate as a suit against the employer itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent. ... It is not a suit against the official personally, for the real party in interest is the entity." (quotation marks and citations omitted)). Although plaintiff may name supervisors in their official capacities or as alter egos of the employer, the Tenth Circuit has suggested that such a practice is "is superfluous where, as here, the employer is already subject to suit directly in its own name." *Lewis v. Four B Corp.*, 211 F. App'x 663, 665 n.2 (10th Cir. 2005) (unpublished); *see Park v. TD Ameritrade Trust Co., Inc.*, No. 10–cv–02599–BNB, 2010 WL 4608225, at *1 (D. Colo. 2010) ("Because Plaintiff has sued her employer, a suit against Defendants Moglia and Bradley in their official capacities under Title VII and the ADA is superfluous."). In the event the Board asserts Eleventh Amendment immunity as to Plaintiff's ADA or Rehabilitation Act claim, Plaintiff may seek leave to amend to re-introduce her official capacity claims to this suit.

Defendants all seek dismissal on the basis that Plaintiff has failed to state a claim for the violation of her constitutional rights as asserted in her Second and Third Causes of

---

[2] Plaintiff asserts that there is no Eleventh Amendment immunity available for her Rehabilitation Act claim but does not concede that dismissal of the official capacity claims is therefore appropriate. (Doc. No. 27, p. 5)

Action.[3] First, Defendants contend that Plaintiff cannot proceed with her § 1983 claims in light of her claims under the ADA and the Rehabilitation Act. In support of their argument, Defendants rely on *Rancho Palos Verdes,* v. *Abrams,* 544 U.S. 113 (2005)*; Vinson v. Thomas*, 288 F.3d 11145, 1156 (9th Cir. 2002); *Alsbrook v. City of Maumelle,* 184 F.3d 999 (8th Cir. 1999), *Holbrook v. City of Alpharetta*, 112 F.3d 1522 (11th Cir. 1997), *Lollar v. Baker*, 196 F.3d 603 (5th Cir. 1999), and *Williams v. Penn Human Relations Comm'n*, 870 F.3d 294 (3d Cir. 2017). In each of these cases the court was presented with a plaintiff seeking to vindicate federal statutory rights against a state actor via the § 1983 vehicle. Those courts were not presented with the issue herein, which is whether Plaintiff can proceed on a parallel § 1983 claim alleging violation of her constitutional, rather than statutory rights, in light of the ADA and the Rehabilitation Act. *See e.g. Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009)(considering whether Title IX precludes an action under § 1983 for alleged gender discrimination and drawing a distinction between § 1983 claims premised on statutory violations and those premised on constitutional violations);. *Bullington v. Bedford Cty., Tennessee,* 905 F.3d 467, 471 (6th Cir. 2018)(citing *Fitzgerald* and noting "the Supreme Court recently outlined how to determine whether a statutory scheme precludes a parallel remedy under § 1983). The Court noted that the issue is whether Congress intended a statute's remedial scheme to be exclusive.

---

[3] Plaintiff's Second Cause of Action is pled under 42 U.S.C. § 1983 and alleges violation of Dr. Rainmaker's substantive due process rights by the individual Defendants in their official capacities. The Third Cause of Action, also § 1983 alleging deprivation of substantive due process rights, names Bennett, Johnson, and Sanders in their individual capacities.

In those cases in which the § 1983 claim is based on a statutory right, "evidence of such congressional intent may be found directly in the statute creating the right, or inferred from the statute's creation of a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Id.* at 120, 125 S.Ct. 1453 (internal quotation marks omitted). In cases in which the § 1983 claim alleges a constitutional violation, lack of congressional intent may be inferred from a comparison of the rights and protections of the statute and those existing under the Constitution. Where the contours of such rights and protections diverge in significant ways, it is not likely that Congress intended to displace § 1983 suits enforcing constitutional rights. Our conclusions regarding congressional intent can be confirmed by a statute's context. *Id.,* at 127, 125 S.Ct. 1453 (BREYER, J., concurring) ("[C]ontext, not just literal text, will often lead a court to Congress' intent in respect to a particular statute").

In determining whether a subsequent statute precludes the enforcement of a federal right under § 1983, we have placed primary emphasis on the nature and extent of that statute's remedial scheme. *See Sea Clammers, supra* at 20, 101 S.Ct. 2615 ("When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983.").

*Fitzgerald*, 555 U.S. at 252–53. The Court thereafter concluded that the plaintiff's equal protection claim under § 1983 was not precluded by her Title IX claim premised on the same facts.

Title II of the ADA and § 504 of the Rehabilitation Act are coextensive with one another and the remedies thereunder are linked to those set forth in Title VI of the Civil Rights Act of 1964. *See* 29 U.S.C. § 794-794a(2)("The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e-5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance

under section 794 of this title."). [4] Additionally, the remedial scheme of Title VI is nearly

identical to that set forth in Title IX. *See Cannon v. University of Chicago*, 441 U.S. 677,

694-95 (1979)(Congress modeled Title IX after Title VI).

> [B]ecause the remedial scheme under Title IX and Title VI are nearly
> identical and because the Supreme Court has instructed that a Title IX claim
> can be vindicated under § 1983, this Court has no trouble concluding that the
> same analysis applies to Title VI, and by extension the Rehabilitation Act.
> Applying that analysis leads to the inevitable conclusion that the
> Rehabilitation [Act] scheme is not "comprehensive" and does not preclude a
> parallel § 1983 claim.

*Stahura-Uhl v. Iroquois Central School Dist.*, 836 F. Supp. 2d 132 (W.D.N.Y. 2011). The

undersigned agrees with the conclusion reached by the Western District of New York in

*Stahura-Uhl*, which by extension applies to Plaintiff's claims under Title II of the ADA.

The Court finds Defendants are not entitled to dismissal of Plaintiff's § 1983 claims on the

basis that parallel proceedings are precluded.

Defendants alternatively argue that Plaintiff has failed to allege sufficient facts to

sustain a substantive due process claim and that the individual Defendants are entitled to

qualified immunity.[5] Qualified immunity protects government officials, in their individual

capacities, from liability for civil damages if their conduct "does not violate clearly

established statutory or constitutional rights of which a reasonable person would have

---

[4] Title VI prohibits programs that receive federal funds from discrimination on the basis of race. 42 U.S.C. § 2000e. Title II of the ADA incorporates the remedial scheme of the Rehabilitation Act of 1973, *see* 29 U.S.C. § 794a(a)(2) (incorporated into Title II by 42 U.S.C. § 12133). *Barnes v. Gorman*, 536 U.S. 181, 185 ("[T]he remedies for violations of § 202 of the ADA [42 U.S.C. § 12132] and § 504 of the Rehabilitation Act are coextensive with the remedies available in a private case of action brought under Title VI of the Civil Rights Act of 1964 . . . ." In *Fitzgerald v. Barnstable School Comm.*, 555 U.S. 246, (2009), the Supreme Court noted that "Congress modeled Title IX after Title VI of the Civil Rights Act of 1964, and passed Title IX with the explicit understanding that it would be interpreted as Title VI was." ).

[5] Although Plaintiff named the individual Defendants in their official capacities, she does not seek monetary damages under § 1983 other than against the individuals in their individual capacities. (Doc. No. 27, p. 12).

known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant invokes a qualified immunity defense, Plaintiff must establish that the defendant violated a statutory or constitutional right, and that the right was clearly established. The Court may consider the qualified immunity test in either order. *See Panagoulakos v. Yazzie*, 741 F.3 1126, 1129 (10th Cir. 2013).

To show that a law is "clearly established," a plaintiff must identify pre-existing precedent that places the "constitutional question beyond debate." *Yeasin v. Durham*, 719 F. App'x 844, 850 (10th Cir. 2018) (quoting *Mullenix v. Luna*, —— U.S. ——, 136 S. Ct. 305, 308 (2015)). A plaintiff must identify "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Cortez v. McCauley*, 478 F.3d 1108, 1114–15 (10th Cir. 2007) (quotation marks and citation omitted). The relevant precedent must be particularized to the facts of this case, making it sufficiently clear such that every reasonable official would have known that the defendant's actions would violate the plaintiff's rights. *Reichle v. Howards*, 566 U.S. 658, 664 (2012).

Here Plaintiff relies on a theory that the Defendants violated her substantive due process rights under the Fourteenth Amendment. The Tenth Circuit recently addressed substantive due process in a case involving expulsion from a university.

> We have held that university students have a property interest in their continued education. *Harris v. Blake*, 798 F.2d 419, 424 (10th Cir. 1986). But to establish that a deprivation of that property interest violates substantive due process, a student must prove that the university's decision to expel her was arbitrary, lacked a rational basis, or shocks the conscience. *Butler*, 341 F.3d at 1200-01.

*Yeasin v. Durham*, 719 F. App'x 844, 852 (10th Cir. 2018).[6] The Supreme Court recently stated that "the 'shocks the conscience' standard is satisfied where the conduct was 'intended to injure in some way unjustifiable by any government interest . . . .'" *Rosales-Mirelese v. United States*, --- U.S. ---, 138 S.Ct. 1897, 1906 (2018).

This case more closely resembles *Gossett v. Oklahoma ex re. Bd. of Regents for Langston University*, 245 F.3d 1172 (10th Cir. 2001), wherein the court reversed the granting of summary judgment to the University. Plaintiff Gossett alleged that his substantive due process rights were violated by the University because he was involuntarily removed from the nursing program due to poor academic progress. He presented evidence that female nursing students were given opportunities to remedy poor grades and given additional instruction as needed while male students were denied such an opportunity.

> Under Supreme Court authority, a plaintiff asserting a substantive due process claim based on an academic decision must show that the decision was the product of arbitrary state action rather than a conscientious, careful and deliberate exercise of professional judgment. *See Ewing*, 474 U.S. at 224–25, 106 S.Ct. 507; *Harris,* 798 F.2d at 424. A plaintiff may make such a showing by evidence that the challenged decision was based on "nonacademic or constitutionally impermissible reasons," rather than the product of conscientious and careful deliberation. *Ewing*, 474 U.S. at 225, 106 S.Ct. 507*; Harris,* 798 F.2d at 424. Mr. Gossett presented evidence sufficient to create a fact issue on whether the decision to require his withdrawal from the nursing program was motivated by impermissible gender discrimination rather than based on an exercise of professional judgment as to his academic ability. Accordingly, summary judgment was not proper on his substantive due process claim

---

[6] In *Yeasin* the court concluded that the individual defendants were entitled to dismissal of the plaintiff's § 1983 substantive due process claim because the cases upon which the plaintiff relied in arguing that the law was clearly established did not establish that expelling Mr. Yeasin "in part, for off-campus, online tweets that affected another students ability to get an education was arbitrary, lacked a rational basis, or shocks the conscience." *Id.* at 854.

*Id.* at 1182.

Plaintiff alleges that the decision to terminate her participation in the MHA program was the result of a failing grade in the professional communications course taught by Professor Bennett, which grade she contends was not earned by poor performance but rather because of Defendant Bennett's actions, which were the result of her failure to accommodate Plaintiff's disability, her animosity toward Plaintiff when she requested accommodation, and by her failure to inform only Plaintiff that a vital class had been re-located. Plaintiff's Amended Complaint raises the question of whether the decision to dismiss her was a "careful and deliberate" exercise of professional academic judgment, rather than being motivated by disability discrimination. *See Assenov v. Univ. of Utah*, 553 F. Supp. 2d 1319, 1330 (D. Utah 2008); *Rossi v. Univ. of Utah*, No. 2:15-CV-00767, 2016 WL 3570620, at *5 (D. Utah June 24, 2016).[7] In light of *Gossett* and Plaintiff's allegations, the Court finds that Plaintiff has both stated a claim for the deprivation of her substantive due process rights and that the right was clearly established. Therefore, Defendants are not entitled to dismissal of Plaintiff's § 1983 claim.[8]

---

[7] "The Due Process Clause encompasses two distinct forms of protection: (i) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (ii) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons." *Reid v. Paulter* 36 F.Supp.3d 1067, 1136 (D.N.M. 2014) citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998)). Certain of Defendants' arguments address issues germane to procedural due process, which is not at issue in this case.

[8] Plaintiff's § 1983 claims are limited to her dismissal from the master's program. To the extent Plaintiff complains that Defendants violated University policy with regard to grading and the appeal of grades, the failure to follow internal policy does not itself support a substantive due process claim, nor has she identified any clearly established federal law that any Defendant violated in that regard. *Brown v. University of* Kansas, 16 F.Supp.3d 1275, 1290 (D. Kan. 2014)(citing *Trotter v. Regents of University of New Mexico*, 219 F.3d 1179, 1185 (10th Cir. 2000)). Simply stated, as currently pled, her substantive due process claim is limited to her contention that her failing grade and removal from the program were the result of disability discrimination.

Defendants Bennett, Johnson, and Sanders, individually, are named as Defendants in Plaintiff's Fourth Cause of Action—tortious interference with a contract. They seek dismissal of this claim as well, asserting that the Oklahoma Governmental Tort Claims Act protects them because they were employees of the University with regard to Plaintiff's removal from the program. Bennett, Johnson, and Sanders alternatively argue they could not have interfered with any contract between the University and Dr. Rainwater because they were employees of the University acting in their representative capacities.

Pursuant to the GTCA, individual state employees "acting within the scope of employment ... shall be immune from liability for torts." Okla. Stat. tit. 51 § 152.1. "The GTCA defines 'scope of employment' as the 'performance by an employee acting in good faith within the duties of his office or employment or of tasks lawfully assigned by a competent authority.'" *Maher v. Oklahoma*, 165 F. Supp. 3d 1089, 1098 (W.D. Okla. 2016) (quoting Okla. Stat. tit. 51, § 152(12)). "Under the GTCA, 'any malicious or bad faith act by an employee falls outside the scope of employment.'" *Tilghman v. Kirby*, No. CIV-13-73-D, 2013 WL 6092529, at *3 (W.D. Okla. Nov. 19, 2013) (unpublished order) (quoting *Harmon v. Cradduck*, 286 P.3d 643, 650 n.20 (Okla. 2012)); *see also*, *Erikson v. Oklahoma*, No. CIV-16-657-R, 2017 WL 3319317, at *2 (W.D. Okla. Jan. 4, 2017), *aff'd,* 690 F. App'x 620 (10th Cir. 2017), *cert. denied,* 138 S. Ct. 407 (2017) ("[t]he Oklahoma Supreme Court has defined 'scope of employment' to specifically exclude actions taken in bad faith: when the tort cause of action sued upon requires proof of an element that necessar[ily] excludes good faith conduct on the part of governmental employees, there

10

can be no liability against the governmental entity in a GTCA–based suit") (internal quotations and citations omitted).

In support of her tortious breach of contract claim against Defendants Bennett, Sanders, and Johnson, in their individual capacities, Plaintiff alleges that each individual Defendant acted outside the scope of his or her employment "intentionally, maliciously and in bad faith." (Amended Complaint, Doc.No. 8, ¶¶ 113, 114, 115). "Generally, the determination of whether an employee was acting within the scope of employment is a question of fact 'except in cases where only one reasonable conclusion can be drawn from the facts.'" *Tilghman*, 2013 WL 6092529, at 3 (quoting *Bryson v. Oklahoma County*, 261 P.3d 627, 632 (Okla. Civ. App. 2011) (internal quotation marks omitted)). "Accordingly, while this issue may be adjudicated upon consideration of a summary judgment motion, it cannot properly be determined in a motion to dismiss." *Burris v. Oklahoma*, No. CIV-13-867-D, 2014 WL 442154, *7 (W.D. Okla. Feb. 4, 2014)(quoting *Tilghman*, 2013 WL 6092529, at *3). The Court finds, therefore, that the GTCA does not mandate dismissal of Plaintiff's tortious interference claim against the individual Defendants.

The Court also rejects Defendants' alternative argument in support of dismissal of Plaintiff's Fourth Cause of Action. "A cause of action for wrongful interference with contract can arise only when one who is not a party to a contract interferes with that contract by convincing one of the contracting parties to breach its terms." *Ray v. Am. Nat'l Bank & Trust Co. of Sapulpa,* 894 P.2d 1056, 1060 (Okla. 1994). Generally, a defendant who was a party to the contract in his representative capacity cannot be held liable on such a claim. *Id.;* see also *Voiles v. Santa Fe Minerals, Inc.*, 911 P.2d 1205, 1210 (Okla.1996) ("Hugoton

cannot be liable for wrongfully interfering with a contract if it was acting in a representative capacity for a party to that contract."). However, the Oklahoma Supreme Court has held that "[i]f an employee acts in bad faith and contrary to the interests of the employer in tampering with a third party's contract with the employer we can divine no reason that the employee should be exempt from a tort claim for interference with contract." *Martin v. Johnson*, 975 P.2d 889, 896–97 (Okla. 1998). Thus, the Court cannot conclude that as a matter of law Defendants cannot be held liable for wrongful interference. Therefore, Defendants' Motion to Dismiss is denied with regard to Plaintiff's Fourth Cause of Action.

Finally, Defendant Ibay, sued on in his official capacity, argues that he should be dismissed because he was not the program director at the relevant time and because Plaintiff has failed to allege sufficient facts to support § 1983 liability. The Court has addressed the propriety of Defendant Ibay's presence in this suit above and has concluded that Plaintiff has stated a claim under § 1983. Therefore, this portion of Defendant's motion is denied.

For the reasons set forth above, Defendants' Motion to Dismiss is GRANTED as to Plaintiff's claims against the individual Defendants in their official capacities for claims under Title II of the ADA and Section 504 of the Rehabilitation Act. In all other respects, the motion is DENIED.

IT IS SO ORDERED this 30th day of January 2020.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE